IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASCENT GLOBAL LOGISTICS INTERNATIONAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>POLAR AIR CARGO WORLDWIDE, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  C.A. No.<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Ascent Global Logistics International, LLC ("Ascent") brings this Complaint against Defendant Polar Air Cargo Worldwide, Inc. ("Defendant" or "Polar Air") and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Ascent Global Logistics International, LLC is a Delaware limited liability company with its principal place of business located at 2424 W Kingsley Street, Suite C, Springfield, Missouri 65807.

2. Defendant Polar Air Cargo Worldwide, Inc. is a Delaware corporation and may be served at The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

3. This Court has original jurisdiction over this action based upon the existence of a federal question pursuant to 28 U.S.C. § 1331, in that it arises under the Convention for the Unification of Certain Rules for International Air Carriage by Air, May 28, 1999 (the "Montreal Convention"), a treaty of the United States.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as both plaintiff and defendant are Delaware business entities.

## FACTUAL BACKGROUND

5. In January 2022, Smithfield Foods, Inc. ("Smithfield") contracted with Ascent to arrange for the transportation of 37,773.40 pounds of boneless pork collar and 40,166.30 pounds of pork belly (the "Subject Cargo") to Haesung Provision in Seoul, South Korea.

### Ascent Retains Defendant to Ship the Subject Cargo to South Korea

6. On or about January 18, 2022, Ascent retained Defendant to transport the Subject Cargo from Cincinnati/Northern Kentucky International Airport ("CVG") to Incheon International Airport ("ICN") in South Korea.

7. Defendant is an air-cargo service provider that assures "the highest levels of quality, reliable, time-definite scheduled air cargo service."[1]

8. Defendant holds itself out as being "guided by some of the most experienced leaders in air cargo" and that it "serves cities around the world with regularly scheduled flights, including . . . Seoul, South Korea (ICN) . . . ."[2]

9. Plaintiff had used Defendant several times in the past when shipping product internationally and relied on Defendant's expertise and assurances in shipping temperature-controlled pork to South Korea.

---

[1] Polar Air Cargo Worldwide, Inc.'s website, https://www.polaraircargo.com/our-company/overview/ (last visited May 5, 2023).
[2] Polar Air Cargo Worldwide, Inc.'s website, https://www.polaraircargo.com/our-company/polar-air-at-a-glance/ (last visited May 5, 2023).

89534439.2

10. As part of the agreement between Smithfield and Ascent, Smithfield transported the Subject Cargo from its facility in Milan, Missouri to Ascent's facility, Basic Crating, in Elk Grove Village, Illinois on or about January 31, 2022.

11. On or about February 1, 2022, Basic Crating re-packed the subject cargo with dry ice and loaded the subject cargo into refrigerated containers in preparation for export.

12. On or about February 2, 2022, Ascent entered a written contract with Defendant by signing Air Waybill 403-16437153 and Air Waybill 403-16437142 ("the Air Waybills"). A copy of the Air Waybills are attached as **Exhibit A**.

## The Montreal Convention

13. The United States of America and South Korea are signatories to the Montreal Convention.

14. The Montreal Convention applies to all international carriage of cargo performed by aircraft for reward. Montreal Convention Art. 1, § 1; *see also* Air Waybills 2.1.

15. The Montreal Convention[3] provides, in pertinent part:

> **Article 18 -- Damage to Cargo**
>
> 1. The carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air.
> 2. However, the carrier is not liable if and to the extent it proves that the destruction, or loss of, or damage to, the cargo resulted from one or more of the following:
>    (a) inherent defect, quality or vice of that cargo;
>    (b) defective packing of that cargo performed by a person other than the carrier or its servants or agents;
>    (c) an act of war or an armed conflict;

---

[3] *Convention for Int'l Carriage by Air*, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (May 28, 1999).

(d) an act of public authority carried out in connection with the entry, exit or transit of the cargo.

3. The carriage by air within the meaning of paragraph 1 of this Article comprises the period during which the cargo is in the charge of the carrier.

\*          \*          \*

**Article 26 – Invalidity of Contractual Provisions**

Any provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this Convention shall be null and void, but the nullity of any such provision does not involve the nullity of the whole contract, which shall remain subject to the provisions of this Convention.

### The Subject Cargo is Shipped and Subsequently Destroyed

16. On or about February 3, 2022, Defendant accepted tender of the Subject Cargo from Ascent.

17. Defendant loaded the Subject Cargo into unit load devices for air transport.

18. South Korea has a customs regulation in place that requires all chilled pork being imported to be sealed on the outside of the unit load devices.

19. The relevant South Korean regulations require: "The refrigeration chamber or container of the ship transporting the exported livestock products shall be sealed at the time of shipment using the seal of the government authority of the exporting country."  Ministry of Agriculture, Food and Rural Affairs (Quarantine Policy Division), 044-201-2083 at Section II(5). A copy of the Regulation is attached as **Exhibit B**.

20. Defendant did not place seals around the outside of the unit load devices containing the Subject Cargo.

21. The Subject Cargo was loaded onto three separate Polar Air flights to South Korea.

22. Polar Air flight PO8953 departed CVG on February 4, 2022 and arrived at ICN on February 5, 2022.

23. Polar Air flight PO989 departed CVG on February 5, 2022 and arrived at ICN on February 6, 2022.

24. Polar Air flight P0749 departed CVG on February 6, 2022 and arrived at ICN on February 8, 2022.

25. Upon arrival in South Korea, customs agents rejected the Subject Cargo because it was not properly sealed in accordance with South Korean regulations.

26. On or about February 14, 2022, the Subject Cargo was destroyed.

### Ascent Notifies Defendant of the Loss

27. Pursuant to the Air Waybills, Ascent was required to make a written complaint to Defendant if the cargo was damaged or otherwise not delivered. Air Waybills §10.1.1, 10.1.3.

28. The day after the Subject Cargo was destroyed, on February 15, 2022, Ascent notified Defendant of the loss due to Defendant's failure to follow South Korea customs regulations and properly seal the Subject Cargo (the "February 15 Notice"). A copy of the February 15 Notice is attached as **Exhibit C**.

29. On September 1, 2022, Ascent sent a demand letter to Defendant outlining the damages related to their failure to seal to the Subject Cargo (the "September Demand Letter"). A copy of the September 1 is attached as **Exhibit D**.

30. To date, Defendant has not responded to the notice of loss or demand letter, or otherwise acknowledged its obligation for these damages.

31. Despite the fact Defendant is wholly at fault for this loss, in order to maintain its working relationship with Smithfield, Ascent paid Smithfield $289,596.72 for the value of the Subject Cargo and cost of destruction of that cargo.

32. As a result of such payment, Ascent has become an assignee of the rights of Smithfield to the extent of its payment.

33. All conditions precedent to Ascent's claims in this action have been performed, have occurred, or have been excused.

### COUNT I – CLAIM FOR DAMAGES PURSUANT TO ARTICLE 18 OF THE MONTREAL CONVENTION

34. Ascent incorporates by reference each and every allegation contained in the preceding paragraphs as set forth herein.

35. The Montreal Convention applies to the international carriage of cargo by air.

36. Ascent contracted with Defendant for the international carriage of cargo by air, the departure being from Cincinnati/Northern Kentucky International Airport ("CVG") and the destination being Incheon International Airport ("ICN") in South Korea.

37. The contracts between Ascent and Defendant are governed by the Montreal Convention.

38. The United States of America and South Korea are signatories to the Montreal Convention.

39. Pursuant to Article 18 of the Montreal Convention, Defendant is liable for damage sustained in the event of the destruction of cargo.

40. Because Defendant did not properly seal the subject cargo, it was rejected by South Korea customs agents and was destroyed.

41. Ascent has performed all conditions precedent necessary to maintain this action against Defendant.

42. The Subject Cargo was destroyed during international carriage by Defendant and therefore Defendant, as the carrier, is strictly liable for Ascent's damages in the amount of $289,596.72.

## COUNT II – BREACH OF CONTRACT

43. Ascent incorporates by reference each and every allegation contained in the preceding paragraphs as set forth herein.

44. Through execution of the Air Waybills, Ascent and Defendant agreed that Defendant would serve as carrier for the Subject Cargo and deliver it to consignee Haesung Provision.

45. The Air Waybills were valid and enforceable contracts between Ascent and Defendant.

46. Because Defendant did not properly seal the subject cargo, it was rejected by South Korea customs agents and was not delivered to consignee Haesung Provision.

47. Ascent's contract with Defendant was breached when Defendant failed to deliver the Subject Cargo to consignee Haesung Provision.

48. As a result of Defendant's breach of contract, Ascent has been damaged in the amount of $289,596.72.

## COUNT III – NEGLIGENCE

49. Ascent incorporates by reference each and every allegation contained in the preceding paragraphs as set forth herein.

50. Defendant received, accepted and agreed to transport the Subject Cargo from Ascent for consideration and therefore owed a duty to Ascent to use reasonable care in the transport of the Subject Cargo, including all reasonable steps to ensure the Subject Cargo reached its destination in good order and condition.

51. Defendant held itself out to Ascent as having expertise when it comes to the shipment of chilled pork to South Korea.

52. Ascent relied on Defendant's expertise when facilitating the shipment of the subject cargo to South Korea.

53. Defendant knew, or by the use of the highest degree of care could have known, that South Korea has customs regulations related to the import of chilled pork.

54. Defendant knew, or by the use of the highest degree of care could have known, that the subject cargo would be rejected in South Korea if it was not properly sealed.

55. Defendant breached its duty to exercise reasonable care in one or more of the following manners:

   a. failing to properly seal the subject cargo;

   b. failing to follow South Korea customs regulations; and

   c. failing to deliver the subject goods to Smithfield's customer in good order and condition.

56. As a direct and proximate result of Defendant's negligence, Ascent suffered damages in the amount of $289,596.72.

WHEREFORE, Plaintiff Ascent Global Logistics International, LLC prays for judgment against Defendant Polar Air Cargo Worldwide, Inc. in the amount of $289,596.72 plus interest, reasonable attorneys' fees, costs, and expenses incurred in pursuing this action, and for such

other and further relief as this Court deems just, proper, and equitable.

          Respectfully submitted,

          **POLSINELLI PC**

          */s/ Christina B. Vavala*
Robert A. Penza (DSB No. 2769)
Christina B. Vavala (DSB No. 6135)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19081
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
rpenza@polsinelli.com
cvavala@polsinelli.com

*Counsel for Plaintiff Ascent Global Logistics International, LLC*

Dated:  May 9, 2023

89534439.2